In re Larry TEVIS and Nancy
Tevis, Debtors.

Larry Tevis, Nancy Tevis, Appellants,

v.

Wilke, Fleury, Hoffelt, Gould &
Birney, LLP, Appellee.

BAP No. EC–05–1131.
Bankruptcy No. 04–26357–B–13J.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on March 24,
2006 at Sacramento, California.

Filed—June 29, 2006.

Amended—Aug. 7, 2006.

Larry Tevis, Rescue, CA, pro se.

Nancy Tevis, Recue, CA, pro se.

Daniel L. Egan, Wilke, Fleury, Hoffelt, Gould & Birney, LLP, Sacramento, CA, for Appellee.

Before: BUFFORD,[1] MONTALI and PAPPAS, Bankruptcy Judges.[2]

## AMENDED OPINION

BUFFORD, Bankruptcy Judge.

## I. INTRODUCTION

Appellants Larry and Nancy Tevis ("the Tevises"), appearing *pro se*, appeal the bankruptcy court's decision ("Memorandum Decision") granting attorneys fees and expenses to Wilke, Fleury, Hoffelt, Gould & Birney, LLP ("Wilke Fleury") for its services as counsel to the former chapter 7[3] trustee. The Tevises make two main contentions in support of their appeal. First, the Tevises dispute that Wilke Fleury satisfied the disinterestedness requirement to qualify it to receive compensation from the estate. Second, the Tevises claim that the bankruptcy court erred in awarding attorneys fees to Wilke Fleury.

Because the bankruptcy court failed to make sufficient findings in its Memorandum Decision *regarding* the Tevises' contacts with Wilke Fleury prior to the commencement of their bankruptcy case, and whether such contacts established grounds for disqualifying Wilke Fleury as disinterested counsel for the chapter 7 trustee under § 327(a), we REVERSE AND REMAND the bankruptcy court's award of fees and expenses to the firm.

We AFFIRM in all other respects.

## II. RELEVANT FACTS

Prior to the filing of their bankruptcy petition, the Tevises were embroiled in state court litigation relating to the purchase, construction, and installation of a double-wide modular home on their property in Rescue, California. While that litigation was pending, the Tevises brought legal malpractice lawsuits against several attorneys who at some point represented them in connection with the modular home litigation. The Tevises' various former attorneys asserted attorney's liens and filed suit against the Tevises for fees incurred during their respective representation periods. According to the Declaration of Nancy Tevis, the Tevises contacted Wilke Fleury during their search for representation in the modular home and malpractice litigation.

The Tevises filed for bankruptcy relief under chapter 7 on June 21, 2004. They

---

1. Hon. Samuel L. Bufford, Bankruptcy Judge for the Central District of California, sitting by designation.

2. This Panel issued its initial opinion on this appeal on June 29, 2006. Appellants filed a motion for reconsideration on July 11, 2006, and appellee filed a motion for rehearing on July 13, 2006. Upon reviewing these motions, the Panel now issues an Amended Opinion, the text of which does not reflect any substantive changes to the initial opinion. The rationale and findings contained within the initial opinion remain the same, and the Panel concurrently issues its orders denying

the motions for reconsideration and rehearing, respectively.

3. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as in force prior to the effective date (October 17, 2005) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Apr. 20, 2005, 119 Stat. 23 ("BAPCPA"). *See id.* § 1501 (providing that BAPCPA applies (with exceptions not relevant herein) only to cases filed on or after its effective date).

then removed the modular home litigation to the bankruptcy court. The chapter 7 trustee, Michael F. Burkart, with court authorization, employed Wilke Fleury as counsel. With counsel's assistance, the trustee settled all litigation and claims among the chapter 7 estate, the parties involved in the purchase and installation of the modular home, and the Tevises' former counsel. Despite the Tevises' objections, the bankruptcy court approved the settlements.[4]

The Tevises subsequently converted their bankruptcy case to a case under chapter 13 on December 1, 2004. After the conversion, Wilke Fleury filed its motion for final allowance of administrative expense for fees and costs as counsel to the former chapter 7 trustee. In opposing the motion, the Tevises argued that, because of Wilke Fleury's prior consultations with the Tevises regarding the pending state court actions, the firm was not a "disinterested person" as defined by § 101(14)(E), because it had a direct relationship and connection with them related to the pending litigation, and that, consequently, compensation should be disallowed. In a declaration in support of the motion for fees and costs, the firm stated that it had no record of any contact with the Tevises prior to the bankruptcy case and that it was unaware of any confidential information that anyone from Wilke Fleury learned from the Tevises prior to its employment as counsel to the chapter 7 trustee.

In a Memorandum Decision entered on March 25, 2005, the bankruptcy court overruled the Tevises' objections and ap-

proved Wilke Fleury's fees and expenses for its services to the chapter 7 trustee. The court made three findings in support of its decision: (a) that the record did not support the contention that Wilke Fleury was not a disinterested person,[5] (b) that the fees requested were reasonable, and (c) that the services were necessary and benefitted the creditors of the estate.

### III. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) (West 2006). This Panel has jurisdiction under 28 U.S.C. § 158(b)(1) (West 2006).

### IV. STANDARD OF REVIEW

Findings of fact are reviewed on appeal for clear error. *See, e.g., Moldo v. Ash (In re Thomas)*, 428 F.3d 1266, 1268 (9th Cir.2005). A bankruptcy court's decisions regarding the employment and qualification of professionals are reviewed for abuse of discretion. *See, e.g., COM–1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.)*, 278 B.R. 189, 194 (9th Cir. BAP 2002). A bankruptcy court's award of attorney fees will not be disturbed unless the bankruptcy court abused its discretion or erroneously applied the law. *Leichty v. Neary (In re Strand)*, 375 F.3d 854, 857 (9th Cir.2004).

### V. ISSUES PRESENTED

The Tevises state the issues presented in this appeal as follows:

(1) Hon. Bankruptcy Judge Jane McKeag failed to acknowledge the Narra-

---

4. Although the Tevises took an appeal from the approval of the settlements, that appeal was subsequently dismissed.

5. The bankruptcy court found that the contact between Nancy Tevis and the Wilke Fleury firm "would not *make the firm* a disinterested

person" (emphasis added). We believe that the court intended to find, "such contact would not *prevent the firm from being* a disinterested person." For the purposes of this decision, we treat this revision as the bankruptcy court's finding.

tive Declaration with exhibits of LARRY and NANCY TEVIS;

(2) The Tevises' Narrative Declaration with exhibits clearly demonstrates bad faith, fraud, and the presentation of erroneous, misleading and fabricated facts to the court by Wilke Fleury, Paul Cass, and others;

(3) There are no true facts in Judge McKeag's ruling;

(4) The Court (and Appellees) failed to comply with Appellant's right to procedural, and substantive due process;

(5) As a result of which the Tevises were denied a meaningful hearing on the merits.

It is difficult to determine from this statement, in light of the trial court's decision and the supporting briefs, what issues the Tevises are attempting to bring before the Panel. It is also difficult to know for sure what legal arguments the Tevises are trying to make on appeal, because their briefs are unfocused, with little reference to legal arguments and no citations to the record (except for general references to voluminous documents).

Looking beyond the statement of issues, it appears that the Tevises make four arguments on appeal. First, they claim that Wilke Fleury was not disinterested, and thus was disqualified from representing the trustee or being paid for such representation. Second, they appear to contend that the bankruptcy court abused its discretion in its award of fees and costs to Wilke Fleury.[6] Third, they make unspeci-

fied due process claims. Finally, they contend that the bankruptcy court erroneously found their Narrative Declaration to be irrelevant.

## VI. DISCUSSION

### A. Citations to the Record

■ The Tevises' briefs are entirely deficient in making reference to the evidentiary record. The briefs must make specific references to the relevant portions of the record. See FED. R. BANKR. P. 8010(a)(1)(E);[7] *Dela Rosa v. Scottsdale Mem'l Health Sys., Inc.,* 136 F.3d 1241, 1242 (9th Cir.1998); *Mitchel v. Gen. Elec. Co.,* 689 F.2d 877, 878–79 (9th Cir.1982). Opposing parties and the court are not obliged to search the entire record, unaided, for error. *Mitchel,* 689 F.2d at 879.

■ An appellate court may dismiss an appeal for failure to provide adequate citations of the record to permit review. *See id.; see also N/S Corp. v. Liberty Mut. Ins. Co.,* 127 F.3d 1145, 1146 (9th Cir.1997) ("By and large, we have been tolerant of minor breaches of one rule or another. Perhaps we are too tolerant sometimes. But there are times when our patience runs out. Then we strike an appellant's briefs and dismiss the appeal."); *Everett v. Perez (In re Perez),* 30 F.3d 1209, 1217 n. 12 (9th Cir.1994) ("[T]he parties must comply with our rules sufficiently to enable us (and the BAP) to examine those materials that bear on their arguments."). However, we have held that pro se appellants may be accorded some leeway. *See, e.g., Ar-*

---

**6.** We find no argument that the bankruptcy court erroneously applied the law in awarding attorneys fees, except on the issue of disinterestedness.

**7.** Rule 8010 provides in relevant part:

(a) Form of briefs

[T]he form of brief shall be as follows:

(1) Brief of the appellant. The brief of the appellant shall contain

. . .

(E) An argument. The argument . . . shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the . . . record relied on.

nold v. Gill (In re Arnold), 252 B.R. 778, 781 n. 2 (9th Cir.BAP2000).

■ Adequate citation to the record includes the specification of each page and the line(s) therein on which the party relies on appeal. Such references are wholly missing in the Tevises' briefs. As Wilke Fleury points out, this deficiency makes it nearly impossible to locate the portions of the record where the Tevises claim the bankruptcy court erred and to find the evidence (if any) supporting their appeal.

According the Tevises' some leeway on their argument that Wilke Fleury failed the disinterestedness test, we address that issue in detail. As appears *infra*, our consideration of the other issues that they attempt to raise is more substantially hindered by their failure to provide specific citations to the record.

### B. Disinterestedness

The Tevises argue in their reply brief that Wilke Fleury was not a disinterested person, as defined under § 101(14)(E), and that the firm was thus not entitled to receive compensation for representing the chapter 7 trustee.[8]

### 1. Statutory Requirements

The professional obligations for attorneys representing chapter 7 trustees are provided in § 327(a), which states in relevant part: "the trustee, with the court's approval, may employ one or more attorneys ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons ...." Section 328(c) further provides in relevant part:

the court may deny allowance of compensation for services and reimbursement of expenses of a professional ... if, at any time during such professional

person's employment ... such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

■ Section 327(a) requires the application of a two-pronged test for the employment of professional persons. A debtor in possession or trustee may employ attorneys with court approval only if (1) they do not hold or represent an interest adverse to the estate, and (2) they are disinterested persons. *See, e.g., Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994) ("Although ... 'interest adverse' is not defined, the companion requirement—that appointees be 'disinterested'—is defined .... These statutory requirements—disinterestedness and no interests adverse to the estate— serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." (internal citations omitted)); *McCutchen, Doyle, Brown & Enersen v. Official Comm. of Unsecured Creditors (In re Weibel, Inc.),* 176 B.R. 209, 212 (9th Cir. BAP 1994); *First Interstate Bank, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.),* 175 B.R. 52, 54 (9th Cir. BAP 1994); *In re Guard Force Mgmt., Inc.,* 185 B.R. 656, 661 (Bankr.D.Mass.1995) (stating that "to be eligible for employment in a bankruptcy case, an attorney must fulfill two statutory requirements: he cannot hold or represent an interest adverse to the estate, and he must be a disinterested person").

■ There is substantial overlap between the two prongs of this test. While the Tevises argue only the disinterested requirement, this concept includes a prohibition on representing conflicting interests.

---

8. Sensing an argument on these grounds, Wilke Fleury addresses this issue in its brief.

Accordingly, we consider both prongs of this requirement. *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 478 (9th Cir. BAP 1996) ("Any professional who the court determines to hold or represent an interest adverse to the estate *or* who is not disinterested is not an officer of the estate during the time of conflict and must be denied compensation for services performed during the conflict pursuant to § 330.") (emphasis added).

The definition of "disinterested person" is provided in § 101(14)(E) (now § 101(14)(C)) which states, in relevant part, that a "disinterested person" means a person that:

> does not have an interest materially adverse to the interest of the estate or of any class of creditors ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason.

■ The term "adverse interest" is not defined in the Bankruptcy Code. The reported cases have defined what it means to *hold* an adverse interest as follows: (1) to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate. *See, e.g., Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir.1999); *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 835 (7th Cir.1998); *Electro–Wire Prods., Inc. v. Sirote & Permutt (In re Prince)*, 40 F.3d 356, 361 (11th Cir.1994); *In re Roberts*, 46 B.R. 815, 826–27 (Bankr. D.Utah 1985), *aff'd in relevant part*, 75 B.R. 402 (D.Utah 1987).

■ To *represent* an adverse interest means to serve as an attorney for an entity holding such an adverse interest. *In re*

*Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Bankr.D.N.J.1988); *Roberts*, 46 B.R. at 827.

■ For the purposes of disinterestedness, a lawyer has an interest materially adverse to the interest of the estate if the lawyer either holds *or* represents such an interest. *See, e.g., Prince*, 40 F.3d at 360–61; *Star Broadcasting*, 81 B.R. at 838; *Roberts*, 46 B.R. at 827.

## 2. California State Law

■ Pursuant to local rule of the Eastern District of California, the professional obligations of attorneys appearing in federal court are governed by California law. What constitutes material adversity for a lawyer is defined by neither bankruptcy law nor other federal law. District Court General Rule 83–180(e), incorporated by reference in Local Rule 1001–1(c) of the bankruptcy court, provides in relevant part:

> Every member of the Bar of this Court ... shall become familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California and decisions of any Court applicable thereto, which are hereby adopted as standards of professional conduct in this Court.

Accordingly, we must look to California state law to determine the applicable professional responsibility rules for Wilke Fleury. *Accord In re Wheatfield Business Park, LLC*, 286 B.R. 412, 419 (Bankr. C.D.Cal.2002); *Wilson v. Cumis Ins. Soc., Inc. (In re Wilson)*, 250 B.R. 686, 689 (Bankr.E.D.Ark.2000); *In re Jaeger*, 213 B.R. 578, 583 (Bankr.C.D.Cal.1997).

The relevant California rule on conflicts of interest for attorneys is stated in Rule

3–310(E) of the California Rules of Professional Conduct, which provides:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

■ The purpose of this rule is to assure that counsel devote undivided loyalty to the client. *See* MODEL RULES OF PROF'L CONDUCT R. 1.7 cmt. (2004). Conflicting loyalties produce inadequate representation, which threatens the interests of the debtor, the trustee and the creditors, and compromises the ability of court to mete out justice. The unsanctioned representation of conflicting interests is one of the most serious sins that a lawyer can commit. "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *San Francisco v. Cobra Solutions, Inc.*, 38 Cal.4th 839, 43 Cal.Rptr.3d 771, 776, 135 P.3d 20 (2006) (quoting *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 86 Cal. Rptr.2d 816, 980 P.2d 371, 378 (1999)).[9]

We turn to the Tevises' briefs to understand in what respect they contend that Wilke Fleury fails the disinterestedness test.

#### a. Tevis Briefs

The only reference to the disinterestedness issue in the Tevises' opening brief appears at page 20, where the brief states:

> Wilke Fleury was NOT a disinterested party. Their Motions and Oppositions are in bad faith, they have committed constructive fraud, perjury, and inflicted intentional emotional distress, by presenting to the Court erroneous, misleading and fabricated facts. It is apparent that they did not check or use any facts in the Court Records. They told the Court that they saved money for the Estate and for the Creditors by making the Agreement/Compromises.
>
> Between Burkart and Wilke Fleury, they were paid the money, they stated would go to the creditors.
>
> They became interested parties when they committed fraud and perjury for the purposes of being awarded money. Their actions were adverse to the Estate.

■ The Tevises give no citation to any evidence in the record supporting any of these charges. Such blanket statements, without citation to any supporting evidence whatsoever, are insufficient to establish that the bankruptcy court abused its discretion in concluding that Wilke Fleury was a disinterested person. More important, even if true, none of these contentions has any relevance to whether Wilke Fleury was disinterested.

The Tevises' reply brief makes a quite different claim on the subject of Wilke Fleury's disinterestedness. The Tevises state:

> The Tevises contacted Wilke Fleury previously regarding this case. As discussed in Debtor's Opposition to Final Allowance (Excerpt of Record Exhibit B and B1), due to their consultations with the debtors, Wilke Fleury were not Disinterested Persons as defined by 11 U.S.C., Section 101(14)(E). Wilke Fleury acknowledged this issue, only by denying contact. We have proven both

---

9. In most circumstances, California law permits a client to give informed written consent to waive a conflict of interest. *See Cobra Solutions,* 43 Cal.Rptr.3d at 776, 135 P.3d 20. No such waiver was given in this case.

outgoing and incoming phone calls by Excepts [sic] of the Record B2.

At oral argument, Wilke Fleury conceded that, if Wilke Fleury had served as lawyers for the Tevises, a conflict of interest would have disqualified the firm from representing the chapter 7 trustee in the Tevises' bankruptcy case.

### b. Standard Where Argument is not Raised in Opening Brief

 Ordinarily, an appellate court will not consider a matter on appeal that is not specifically and distinctly argued in appellant's opening brief. *See, e.g., Affordable Housing Dev. Corp. v. Fresno,* 433 F.3d 1182, 1193 (9th Cir.2006); *Price v. Lehtinen (In re Lehtinen),* 332 B.R. 404, 410 (9th Cir.BAP2005). However, there are three main exceptions to this rule. First, an appellate court will review an issue not present in an opening brief for "good cause shown," or "if a failure to do so would result in manifest injustice." *Koerner v. Grigas,* 328 F.3d 1039, 1048 (9th Cir.2003) (citation omitted); *Alcaraz v. INS,* 384 F.3d 1150, 1161 (9th Cir.2004) (manifest injustice); *United States v. Loya,* 807 F.2d 1483, 1487 (9th Cir.1987). Second, an appellate court has "discretion to review an issue not raised by appellant ... when it is raised in the appellee's brief." *Affordable Housing,* 433 F.3d at 1193; *Koerner,* 328 F.3d at 1048; *Boldt v. Crake (In re Riverside–Linden Inv. Co.),* 945 F.2d 320, 324 (9th Cir.1991). Third, an appellate court may review an issue "if the failure to raise the issue properly did not prejudice the defense of the opposing party." *Koerner,* 328 F.3d at 1049; *Alcaraz,* 384 F.3d at 1161.

 In this case we find that all three exceptions arguably apply. The second exception clearly applies, because Wilke Fleury's appellee brief addresses whether the firm satisfied the disinterestedness requirement in light of Nancy Tevis' prepetition contact with the firm seeking representation. The third exception also applies, because it is a more general rule encompassing the second exception. Having addressed the prepetition contact in its brief, Wilke Fleury's defense is not prejudiced by the failure of appellants' opening brief to argue the issue. As to the first exception, it is possible that manifest injustice may result if we do not address this issue. Finally, the leeway accorded a *pro se* appellant counsels in favor of applying a recognized exception for this issue. *See, e.g., In re Arnold,* 252 B.R. at 781 n. 2.

Accordingly, we turn to an examination of whether the bankruptcy court properly found that Wilke Fleury was disinterested.

### c. Concurrent Representation

 Two ethical duties are entwined in any attorney-client relationship. The first is the attorney's duty of confidentiality, which fosters full and open communication between client and counsel, based on the client's understanding that the attorney is statutorily obligated[10] to maintain the client's confidences. *See, e.g., Cobra Solutions,* 43 Cal.Rptr.3d at 776, 135 P.3d 20; *SpeeDee Oil,* 86 Cal.Rptr.2d 816, 980 P.2d at 378. The second is the attorney's duty of undivided loyalty to the client. *See, e.g., Cobra Solutions,* 43 Cal.Rptr.3d at 776, 135 P.3d 20; *Flatt v. Superior Court,* 9 Cal.4th 275, 36 Cal.Rptr.2d 537, 885 P.2d 950, 953 (1994). These ethical duties are mandated by Rules 3–310(C) & (E) of the California Rules of Professional Conduct.[11]

---

**10.** *See* CAL. BUS. & PROF. CODE § 6068(e) (West 2006).

**11.** Rule 3–310(C) of the California Rules of Professional Conduct provides:

If the Tevises had been *current* clients of Wilke Fleury at the same time that it was counsel for the trustee, it clearly would have failed the "hold or represent" requirement of § 327(a). *See, e.g., Cobra Solutions,* 43 Cal.Rptr.3d at 776, 135 P.3d 20 ("An attorney who seeks to simultaneously represent clients with directly adverse interests in the same litigation will be automatically disqualified."); *SpeeDee Oil,* 86 Cal.Rptr.2d 816, 980 P.2d at 379 ("[I]f an attorney—or more likely a law firm—simultaneously represents clients who have conflicting interests, a more stringent per se rule of disqualification applies. With few exceptions, disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other."); *Flatt,* 36 Cal.Rptr.2d 537, 885 P.2d at 955 (even though the simultaneous representations may have nothing in common, and there is no risk that confidences from one client may be used against that client, disqualification is virtually automatic).

### d. Successive Representation

The test is quite different with respect to successive representation. If the Tevises had been *prior* clients of Wilke Fleury, but this representation had terminated before it began to represent the trustee, it would fail the "hold or represent" requirement only if there was a "substantial relationship" between the subject matter of that representation and the representation of the trustee. *See, e.g., Cobra Solutions,* 43 Cal.Rptr.3d at 776–77, 135 P.3d 20; *Flatt,* 36 Cal.Rptr.2d 537, 885 P.2d at 954 (as to a former client, "the governing test requires that the client demonstrate a 'substantial relationship' between the subjects of the antecedent and current representations."). If the subject of the prior representation is such as to make it likely that the attorney received confidential information that is relevant and material to the present representation, the two representations are substantially related. *Cobra Solutions,* 43 Cal.Rptr.3d at 776–77, 135 P.3d 20. If there is a substantial relationship between the former and the current representation, the court will conclusively presume that the attorney possesses confidential information adverse to the former client. *Id.* ("[T]he attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel."); *Henriksen v. Great Am. Sav. & Loan,* 11 Cal. App.4th 109, 14 Cal.Rptr.2d 184, 186 (1992). This presumption arises because the duty to preserve client confidences survives the termination of the attorney's representation. *Cobra Solutions,* 43 Cal. Rptr.3d at 776, 135 P.3d 20. When a substantial relationship between the two representations is shown, the attorney is automatically disqualified in the second representation. *Id.* at 777, 135 P.3d 20.

Former clients have an overwhelming interest in preserving the confidentiality of information they imparted to counsel during a prior representation. "That interest is imperiled when counsel later undertakes

A member shall not, without informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

representation of an adversary in a matter substantially related to counsel's prior representation of the former client." *Id.* at 780, 135 P.3d 20.

■ Where one attorney is disqualified for a conflict of interest, the entire firm is disqualified (with exceptions not relevant in this case). *See, e.g., SpeeDee Oil,* 86 Cal.Rptr.2d 816, 980 P.2d at 374; *Flatt,* 36 Cal.Rptr.2d 537, 885 P.2d at 954; *Henriksen,* 14 Cal.Rptr.2d at 187–88 (rejecting ethical wall solution to conflict of interest problem). In California, vicarious disqualification is based on case law.[12] *Cobra Solutions,* 43 Cal.Rptr.3d at 777, 135 P.3d 20.

■ Protection of the confidentiality of client information is the chief fiduciary duty at issue in a law firm's successive representation of clients with potentially adverse interests. *Flatt,* 36 Cal.Rptr.2d 537, 885 P.2d at 954; *Pound v. DeMera DeMera Cameron,* 135 Cal.App.4th 70, 36 Cal.Rptr.3d 922, 926 (2005). Whether and to what extent the attorney acquired confidential information in the prior representation is of primary importance, and is not necessarily determined by the amount of time involved. *SpeeDee Oil,* 86 Cal. Rptr.2d 816, 980 P.2d at 380. "An attorney represents a client—for purposes of a conflict of interest analysis—when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result." *Id.*

e. **Preliminary Consultation, but No Actual Engagement**

In this case, the parties agree that Wilke Fleury never represented the debt-

ors at all. However, this is not the end of the story under California law.

■ Even though the debtors did not retain the firm, California law may disqualify the firm from representing an opposing party under appropriate circumstances. Under California law, the mere consultation with a prospective client may create a disqualifying conflict of interest for a lawyer, especially where confidential information was disclosed. The leading case is *SpeeDee Oil,* where the California Supreme Court stated, "[t]he fiduciary relationship existing between lawyer and client extends to preliminary consultations by a prospective client with a view to retention of the lawyer, although actual employment does not result." *Id.* at 379 (quoting *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.1978)). "The primary concern," the court stated in *SpeeDee Oil,* "is whether and to what extent the attorney acquired confidential information." *Id.* at 380. The Supreme Court mandated disqualification of the law firm at issue, because the attorney had received "substantial amounts of material confidential information." *Id.* at 381.

■ The evidence before the bankruptcy court is in dispute as to whether the Tevises sought legal representation from Wilke Fleury. Nancy Tevis' handwritten notes, which are in the record, support the conclusion that she contacted Wilke Fleury, which declined the representation. Wilke Fleury denies any contact with the Tevises.

The bankruptcy court found that, "[e]ven if the Debtors had contacted Wilke

---

**12.** With the exception of a few provisions, California has not followed the vast majority of states in adopting the Model Rules of Professional Conduct promulgated by the American Bar Association. *See* MODEL RULES OF PROF'L CONDUCT (2004). In those states, vicarious disqualification is governed by Rule 1.10. *See id.* R. 1.10.

Fleury regarding possibly retaining the firm, such contact would not [disqualify] the firm [as] a disinterested person." We find that the record does not support this conclusion.

Under California law, the possession of relevant confidential information is conclusively presumed if two conditions are met. First, there must be a substantial relationship between the representation of the former client and the subsequent representation. Second, it must appear by virtue of the nature of the former representation or the relationship of the attorney to the former client that confidential information material to the current dispute would normally have been imparted to the attorney. *See, e.g., Zimmerman v. Zimmerman (In re Marriage of Zimmerman)*, 16 Cal.App.4th 556, 20 Cal.Rptr.2d 132, 136 (1993). The substantial relationship between Nancy Tevis' legal problem when she claims that she called Wilke Fleury and the subsequent bankruptcy case is not disputed.

Thus the determinative issue is whether the nature of the contact, based on the evidence in the record, is such that the firm would have normally received confidential information. There is no evidence in the record that either of the Tevises actually spoke with any attorney at the firm. There is no evidence in the record that either of them received any legal advice from anyone at the firm.

The disqualification analysis is not, however, limited to situations in which a prospective client discloses confidential information to an attorney. A communication with a nonlawyer employee of a law firm can also give rise to a disqualifying

conflict of interest, especially where confidential information is disclosed. *See, e.g., Widger v. Owens–Corning Fiberglas Corp. (In re Complex Asbestos Litigation)*, 232 Cal.App.3d 572, 283 Cal.Rptr. 732, 745 (1991) ("[Nonlawyer] personnel are widely used by lawyers to assist in rendering legal services. Paralegals, investigators, and secretaries must have ready access to client confidences in order to assist their attorney employers." (internal citations omitted)).

Nancy Tevis states in her declaration that in one telephone call she spoke with Larry Hartmann. Apparently, Mr. Hartmann was the office manager for Wilke Fleury, and may have performed screening of possible clients. In her declaration, Nancy Tevis stated that she recalled "explaining our situation" to Mr. Hartmann and "fully explaining our cases" to someone at the firm. Nancy Tevis' handwritten notes include Mr. Hartmann's name, adjacent to the firm's name and phone number.

Thus, it is possible that during one of Nancy Tevis' phone calls to Wilke Fleury, prior to the Tevises' bankruptcy case, she disclosed confidential information regarding the pending modular home and malpractice litigation to Mr. Hartmann. The excerpts of the record that were before us on appeal, however, did not include any testimony by Mr. Hartmann or other evidence regarding any communications he had with the Tevises.[13]

A professional employed pursuant to § 327 has a "duty to make full, candid and complete disclosure of all facts concerning his transactions with the debtor. Professionals must disclose all connec-

---

**13.** In motions for reconsideration filed after we issued our original opinion, each party has submitted the declaration of Mr. Hartmann, which was part of the record before the bankruptcy judge. Our review of the declaration does not alter our determination that remand is required in this case to determine whether Nancy Tevis' calls impact Wilke Fleury's disinterestedness.

tions with the debtor ... no matter how irrelevant or trivial those connections may seem." *Movitz v. Baker (In re Triple Star Welding, Inc.)*, 324 B.R. 778, 789 (9th Cir. BAP 2005) (quoting *Mehdipour*, 202 B.R. at 480). Employment is a prerequisite to compensation, and until proper disclosure has been made, the court cannot know whether the professional was validly employed. *Triple Star Welding*, 324 B.R. at 789; *see CIC Inv. Corp.*, 175 B.R. at 55–56 (§ 327(a) "clearly states that the court cannot approve the employment of a person who is not disinterested").

Wilke Fleury had the burden to show its disinterestedness, and it failed to do so. Because there was inadequate evidence upon which the bankruptcy court could decide that confidential information was not disclosed during prior contacts between the Tevises and Wilke Fleury, the court could not properly decide the disinterestedness issue. We must remand for a further determination of this issue.

### C. Fees and Costs

We now turn to the bankruptcy court's decision on the award of fees and costs to Wilke Fleury.

### 1. Findings Supporting Fee Award

■ Section 330(a)(1) provides that, after notice and a hearing, the court may award to counsel for the trustee reasonable compensation for actual, necessary services rendered and reimbursement for actual and necessary expenses. In determining the reasonableness of the compensation to be awarded, § 330(a)(3) provides:

the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

 (A) the time spent on such services;

 (B) the rates charged for such services;

 (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

 (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

 (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

■ In its Memorandum Decision, the bankruptcy court found that Wilke Fleury's fee request was reasonable and that its application for fees complied with the requirements of § 330(a). The court acknowledged Wilke Fleury's efforts in coordinating the resolution of five lawsuits involving over ten different parties and stated that the conversion of appellants' chapter 7 case to one under chapter 13 appeared to have resulted from the successful administration of the chapter 7 case.

The Memorandum Decision also notes that the trustee's fees had already been determined to be reasonable, and that Wilke Fleury's representation of the former chapter 7 trustee "was essential to the approval of the compromise that is now funding the Debtors' chapter 13 plan." With respect to billing rates, the court stated that Wilke Fleury billed its attorney at a reduced hourly rate, did not bill for twelve hours of billable paralegal time, and further discounted its total fee request by ten percent. In addition, Wilke Fleury assisted the chapter 13 trustee subsequent to conversion, at no additional charge.

The Tevises' opening brief challenges the bankruptcy court's fee award. However, their brief misses the mark. The Tevises devote several pages of their brief to a discussion of their modular home litigation and the legal representation that they received in that litigation from other lawyers. And, another full page of the brief amounts to complaints about the actions of the trustee in this case. None of these matters are before us in this appeal.

The entire remainder of the opening brief is devoted to a discussion of seventeen cited "errors of the bankruptcy court." The format of this discussion is to quote a statement of the bankruptcy court and then to present the Tevises' own "rebuttal."

For the most part, the rebuttal consists of statements by the Tevises with no reference to the record whatever. Insofar as we can tell, this rebuttal is either based on evidence that the bankruptcy court did not find persuasive, or on new evidence that was never presented to the bankruptcy court. Where the Tevises do make references to the record, every reference is to an entire document, and none gives either a page or a line number where the supporting evidence may be found. The excerpts of record that the Tevises submitted are 1181 pages long. For the reasons stated *supra*, we decline to make our own search of this record to see whether the record supports the "rebuttal" statements of the Tevises.

The Tevises claim in their reply brief that the bankruptcy court either erred in basing its Memorandum Decision on false information provided by biased parties or not reviewing the "appropriate court documents." Specifically, the Tevises make two arguments: first, that the court failed to consider their Narrative Declaration and exhibits filed in support thereof in deciding to award fees and costs to Wilke

Fleury and, second, that by repeating allegedly fabricated information presented by Wilke Fleury, the court ruled that the Tevises' evidence was irrelevant.

The Tevises make no claim that Wilke Fleury did not actually perform the services or incur the expenses described in the Memorandum Decision or its fee application. The briefs filed by the Tevises are unfocused, one-sided diatribes on everything that they think went wrong in the bankruptcy case and in their prior litigations. We cannot discern any showing that the bankruptcy court abused its discretion in finding that the services were necessary, that they benefitted the estate, or that they were reasonable.

 Even if we were to make our own search of the record to find evidence to support the "rebuttal" statements, and were to find evidence supporting each of the rebuttals, this would not give us grounds to reverse the decision of the bankruptcy court. We cannot set aside the bankruptcy court's attorneys fees award unless we are persuaded that the court abused its discretion. We are not empowered to make our own judgment of these issues. Furthermore, it is the bankruptcy judge, and not this Panel, that determines the credibility of the evidence.

### D. Tevises' Other Objections

We turn now to the remaining issues that the Tevises raise, which concern their Narrative Declaration and their due process rights.

### 1. The Narrative Declaration

 It is the bankruptcy court's responsibility to evaluate the evidence presented. Although the Memorandum Decision does not specifically mention the Tevises' Narrative Declaration, there is no indication in the record that the court ig-

nored the declaration in reaching its decision to grant Wilke Fleury's motion for fees and costs. Whether the Narrative Declaration "clearly demonstrates bad faith" or anything else is for the bankruptcy court to determine. If the contention is that the Memorandum Decision does not make an explicit reference to the "Narrative Declaration," this is not reversible error. The trial court has an obligation to consider all of the evidence properly presented, and to give it the weight that it deserves. The court has no obligation to mention all of the evidence that it has considered. The bankruptcy court clearly did not rule that the Tevises' evidence was irrelevant.

■ Furthermore, whether the bankruptcy court considered the Tevises' Narrative Declaration is not an appealable issue. Only the decision itself may be appealed. If the bankruptcy court had found that the declarations were not properly before the court, or that they were irrelevant, then we could review that decision. However, the bankruptcy court made no such findings.

### 2. Due Process Rights

■ In the fourth and fifth questions on appeal, the Tevises contend that they were denied the right to procedural and substantive due process, and that they were denied a meaningful hearing on the merits. However, they fail to point out in what respect they were denied the full measure of their due process rights. Indeed, both their opening brief and their reply brief ignore these issues altogether after articulating them in the statement of issues on appeal.

The bankruptcy court held a hearing on the merits of the fee application of Wilke Fleury. The Tevises were present at the hearing, and argued their position. They fail to point out any due process shortcomings of this hearing.

Likewise, the Tevises make no argument that they were not given a full and fair opportunity to present all of the evidence to the court that they considered relevant to the allowance of fees for the trustee's counsel. They contend only that the trial judge "failed to acknowledge" their "Narrative Declaration." The Tevises fail to explain what such acknowledgment means, how the trial record falls short on this issue, or what legal obligation the court did not satisfy.

We conclude that the Tevises were given the full measure of due process rights, both procedural and substantive, to which they were entitled.

### VII. CONCLUSION

For the foregoing reasons, we REVERSE AND REMAND the bankruptcy court's finding as to the firm's disinterestedness and its entitlement to compensation. The bankruptcy court did not adequately consider whether confidential information was disclosed during the Tevises' contacts with Wilke Fleury personnel prior to the filing of their bankruptcy petition and whether such prior contacts were sufficient to disqualify the firm as attorney for the Trustee under § 327(a). If Wilke Fleury shows its disinterestedness, it should be awarded the fees and costs as found by the bankruptcy court. If not, the bankruptcy court should issue an appropriate order consistent with this opinion.

We AFFIRM the decision of the bankruptcy court in all other respects, including that compensation and expenses sought by Wilke Fleury were reasonable in amount.