FILED

DEC 18 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1235-TaSG |
| BERNADETTE CHAPMAN, | Bk. No. 6:16-bk-20430-SC |
| Debtor. | |
| BERNADETTE CHAPMAN, | |
| Appellant, | |
| v. | MEMORANDUM* |
| KARL T. ANDERSON, Chapter 7 Trustee; U.S. BANK, N.A.; WENJING DAI, | |
| Appellees. | |

Argued and Submitted on November 21, 2019
at Pasadena, California

Filed – December 18, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Scott C. Clarkson, Bankruptcy Judge, Presiding[**]

Appearances:  Richard Lawrence Antognini argued for appellant; Jonathan Fink of Wright Finlay & Zak, LLP argued for appellee U.S. Bank, N.A.

Before: TAYLOR, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

U.S. Bank, N.A. obtained an order granting *in rem* relief from the automatic stay under § 362(d)(4)[1] as to real property owned by Bernadette Chapman. Immediately before foreclosure commenced, Ms. Chapman filed her third bankruptcy. U.S. Bank relied on its *in rem* order and foreclosed.

In an adversary proceeding, Debtor argued that the foreclosure was void because the *in rem* order was void: U.S. Bank obtained it in another parties' bankruptcy case in violation of the automatic stay in Debtor's second bankruptcy. In preliminary hearings, the bankruptcy court expressed agreement.

After Debtor's chapter 11 case was converted to chapter 7, trustee Karl Anderson evaluated the adversary proceeding's merits, negotiated a

---

[**] Although Judge Clarkson signed the order on appeal, Judge Jury decided the matter and entered the relevant findings of fact and conclusions of law.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

$31,000 settlement, and filed a Rule 9019 motion seeking approval of the resolution. Debtor opposed because she thought $31,000 undervalued the case.

The bankruptcy court, after analyzing the settlement under the factors required by relevant caselaw, granted the motion. Although Debtor appeals she does not, in the main, dispute the bankruptcy court's factor-based analysis. As a result, she does not show that the bankruptcy court abused its discretion when it approved the Trustee's exercise of business judgment to settle the case.

Accordingly, we AFFIRM.

## FACTS

Debtor owned real property in San Dimas, California (the "Property"). She was employed by the elder-care facility that operated thereon. U.S. Bank held a debt secured by a senior trust deed on the Property.

In the fourth bankruptcy impacting U.S. Bank's ability to foreclose, a chapter 13 case filed by Debtor's sister, it obtained and recorded an *in rem* stay relief order as to the Property. It then scheduled another foreclosure, but, before the foreclosure sale commenced, Debtor filed the present bankruptcy case. U.S. Bank relied on its *in rem* order and completed the foreclosure.

Debtor then sought, by motion, damages and a declaration that the

*in rem* order was void because it was obtained while her second bankruptcy was pending. The bankruptcy court denied the motion on procedural grounds and required an adversary proceeding. At the hearing, the bankruptcy judge also expressed an initial belief that the *in rem* order was stay-violative, and then suggested that retroactive stay relief might be appropriate.

Debtor filed her adversary proceeding and sought: declaratory relief that the *in rem* order was void; set aside of the foreclosure sale and trustee's deed; damages for wrongful foreclosure; and § 362(k) sanctions. She again alleged that both the *in rem* order and the foreclosure finalized in reliance thereon were void.

U.S. Bank then sought and obtained retroactive stay relief. But when the bankruptcy judge annulled the stay, she reserved on issues related to the alleged stay violation. She acknowledged, however, that her conclusion that a stay violation existed was not final.

The bankruptcy court subsequently converted the case to chapter 7, and Debtor filed updated schedules identifying the adversary proceeding as an estate asset and claiming an exemption in it.

Accordingly, the Trustee proceeded to administer the adversary proceeding as an asset of the estate, and he moved to approve a settlement

4

thereof under Rule 9019.[2] The settlement agreement provided that the Trustee would dismiss the adversary proceeding with prejudice in exchange for $23,000 from U.S. Bank and $8,000 from the individual who purchased the Property at the foreclosure sale. The Trustee anticipated that $27,865 would be paid to Debtor on account of her exemption, leaving $3,135 for the estate.

Debtor opposed; she argued that $31,000 undervalued the case.

At a hearing, the bankruptcy court made findings of facts and conclusions of law on the record and approved the settlement.

First, it identified and evaluated the factors relevant to a bankruptcy settlement. It found that there was a substantial question about whether the Trustee would prevail on the merits: despite its original conclusion that there was a stay violation, it acknowledged there were no cases on either side of the matter. So, it continued, there was no guaranteed victory. As to the difficulties of collection, the bankruptcy court noted that it could be difficult to collect from the third-party purchaser. Next, the bankruptcy court found the factors of complexity and legal costs particularly relevant; they weighed strongly in favor of compromise because the estate had no funds to prosecute litigation on a novel and complex legal issue through

---

[2] No party in interest has contested, either at the trial level or on appeal, that the adversary proceeding was an estate asset or that the Trustee had standing to settle it. This Court therefore expresses no opinion on such issues.

5

determination and likely appeal. Finally, in evaluating whether creditors would benefit from the settlement, the bankruptcy court acknowledged that Debtor was set to receive most of the funds. But it noted that having the case pending for years when it was unlikely to return anything to creditors was not in the best interest of the bankruptcy system.

The bankruptcy court also evaluated the quantum of the settlement and found that the Trustee properly exercised business judgment in accepting $31,000 for the case. It concluded that Debtor would have a difficult time proving damages because the foreclosure was more or less inevitable. In her first chapter 11 case, Debtor stopped making adequate protection payments; and Debtor had not made any payments for a year and a half pre-foreclosure. As a result, the bankruptcy court reasoned, Debtor and her employer (the elder care facility) would have to move out of the Property and relocate patients anyways—indeed, the bankruptcy court noted that there was evidence the moving process was underway before foreclosure.

The bankruptcy court also reasoned that the inevitability of foreclosure would discredit Debtor's allegations of emotional distress because Debtor had to know she would lose the Property. And this problem was exacerbated by what it identified as Debtor's significant credibility issues. Hr'g Tr. (June 19, 2018 ) 5:9–11 ("I mean, if it's true that she was lying to the Court from the beginning of her Chapter 11, which is

6

not a good thing."), 15:22–24 ("So, this is all very dubious. And her credibility is really in question after what I read in the deposition transcript."). Finally, the bankruptcy court observed that there were no allegations that U.S. Bank acted in an outrageous manner.

In sum, the bankruptcy court concluded that the settlement should be approved and that the Trustee appropriately exercised his business judgment.

It entered an order approving the settlement. Debtor appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Does Debtor have standing?

Did the bankruptcy court abuse its discretion when it approved the Rule 9019 settlement?

## STANDARD OF REVIEW

We consider appellate standing de novo. *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 879 (9th Cir. 2012). We review the bankruptcy court's approval of a settlement for an abuse of discretion. *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380 (9th Cir. 1986). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes

7

factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

On appeal, Debtor argues that the bankruptcy court erred in approving the settlement because: first, the Trustee's counsel had a conflict of interest; and, second, it discounted Debtor's damages to nothing. We first discuss the Trustee's threshold assertion that Debtor lacks standing.

### A. We decline to dismiss the appeal based on Debtor's alleged lack of standing.

Only "persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have" standing to appeal. *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). This is known as the "person aggrieved" test. *Id.* at 443. So a "hopelessly insolvent debtor does not have standing to appeal orders affecting the" estate's size because those orders "would not diminish the debtor's property, increase his [or her] burdens, or detrimentally affect his [or her] rights." *Id.* at 442. And in the claim objection context, we have noted that a chapter 7 debtor generally has standing to object to claims only when "there is a sufficient possibility of a surplus . . . or when the claim involved will not be discharged." *Wellman v. Ziino (In re Wellman)*, 378 B.R. 416, 2007 WL 4105275, at *1 n.5

8

(9th Cir. BAP 2007) (unpublished).

The Trustee argues that Debtor lacks standing because she has not shown that the case will result in a surplus and her claim of exemption will be paid in full. Debtor argues that she also has standing because any increase in the amount of the settlement would result in payment of priority, nondischargeable taxes. On this record, we conclude that Debtor has a sufficient pecuniary interest to have appellate standing given the nondischargeable tax debt.

**B. The Trustee's choice of counsel does not support reversal.**

Debtor asserts, correctly, that California's Rules of Professional Conduct apply. *See Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 688 (9th Cir. BAP 2006). She then argues that the Trustee's counsel had a clear conflict of interest because he represented Debtor in the adversary proceeding and then negotiated the Trustee's settlement of that adversary proceeding over Debtor's objection. But in her opening brief she never explains why the alleged conflict requires reversal. In particular, it was the Trustee—not the law firm—that exercised business judgment in deciding whether and how to settle the lawsuit. The bankruptcy court approved that decision, and that is the order on appeal.

Instead, Debtor cites and extensively discusses *In re Tevis*, 347 B.R. at 689. But *In re Tevis* concerned an appeal from an order awarding a law firm its attorney fees. *Id.* at 684. It was in that context that the bankruptcy court

9

and the Ninth Circuit Bankruptcy Appellate Panel evaluated whether the law firm complied with the California Rules of Professional Conduct and was entitled to fees under the Code. *Id.* at 687–95. In this case, the law firm did not seek fees through the settlement, and its entitlement to fees was not adjudicated by the bankruptcy court in the order on appeal.

In her appellate reply papers, Debtor goes one step farther and asserts that the conflict of interest renders the settlement void: "When an attorney has a conflict of interest, any judgment against the attorney's client is void and must be vacated." Appellant's Reply Br. at 8. To support this proposition, she cites *State of Arizona ex rel. Arizona Dep't of Revenue v. Yuen*, 179 Cal. App. 4th 169, 180 (2009). We decline to consider this argument for two reasons: first, she never presented it to the bankruptcy court; second, she never raised it in her opening appellate brief. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("The usual rule is that arguments raised for the first time on appeal or omitted from the opening brief are deemed forfeited."); *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010) ("[W]e won't consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). And in any event, even assuming that *Yuen* stands for the broad rule that Debtor asserts, it does not apply to the present case because the Trustee did not obtain a judgment against Debtor.

To the extent conflict issues exist, the Debtor may raise them in the

context of a fee application.

### C. The bankruptcy court did not abuse its discretion when it granted the settlement motion.

**Governing law.** Rule 9019 provides that, on the trustee's motion, the bankruptcy court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a). Bankruptcy courts have considerable latitude in approving compromise agreements. *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). But that discretion "is not unlimited." *Id.* The compromise must be "fair and equitable." *Id.* The "purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A & C Props.*, 784 F.2d at 1380-81. The law "favors compromise and not litigation for its own sake . . . ." *Id.* at 1381.

When deciding whether a compromise is fair and reasonable, a bankruptcy court should consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* The trustee has the burden to persuade the bankruptcy court that the compromise is fair and equitable. *Id.* And we must affirm the bankruptcy court's decision if it "amply considered the various factors that determine[]

11

the reasonableness of the compromise . . . ." *Id.*

**The bankruptcy court correctly analyzed and weighed the *A & C Properties* factors.** The bankruptcy court discussed, analyzed, and weighed the various *A & C Properties* factors. It concluded that several of the factors favored settlement; notably, it did not find that any counseled against compromise. On appeal, Debtor does not address this reasoning, much less argue that the bankruptcy court was wrong. We treat any contrary suggestion as waived. *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived."). Thus, Debtor provides no cognizable argument about why the bankruptcy court, in evaluating the relevant factors, abused its discretion.

**Debtor's appellate arguments do not show that the bankruptcy court abused its discretion.** Instead, Debtor adopts the same tactic on appeal that she did before the bankruptcy court: she argues that the settlement amount was too low. But Debtor did not offer to purchase the lawsuit from the Trustee; nor did she request overbidding procedures.

In particular, Debtor argues that the bankruptcy court erred because it under-valued her alleged damages for attorney's fees, lost wages, and emotional distress. But on appeal she provides no calculation of what her actual damages would be; she merely suggests that we consider the math of the settlement and her alleged "hard damages" of $40,000 in attorney's

12

fees and then conclude that the $31,000 settlement is insufficient.

But that is not how the "math" (i.e., a risk-weighted calculation) works. Debtor has not disputed and ignores the bankruptcy court's conclusions that liability was *not* a certainty. And she similarly fails to address the estate's lack of funds to prosecute the action and the years of litigation required to reach finality after any appeal.

In an attempt to elevate the value of her case, Debtor argues that this case is comparable to *Sundquist v. Bank of America (In re Sundquist)*, 566 B.R. 563, 620–21 (Bankr. E.D. Cal. 2017), *vacated in part*, 580 B.R. 536 (Bankr. E. D. Cal. 2018). The bankruptcy court disagreed. So do we. *Sundquist* involved outrageous facts; Debtor never addresses the bankruptcy court's analysis that U.S. Bank did nothing comparable to the bank in *Sundquist*.[3]

And as for the emotional distress component, Debtor concedes on appeal that "credibility [issues] may have required that the value of her damage claims be discounted." Opening Br. at 37; *Id.* ("Chapman's credibility issues may have justified a substantial discount of her emotional distress damages . . . .").

---

[3] In addition, *Sundquist* involved two plaintiffs and here there is just Debtor. We acknowledge that she spends considerable time discussing her children. Following *Sundquist*, however, we see no need to evaluate their potential damages because they are not parties to this action. *In re Sundquist*, 566 B.R. at 608 n.102 ("A plausible case could be made that the two Sundquist minor children also suffered emotional distress as a proximate result of Bank of America's stay-violating conduct. However, they are not, at least not as yet, parties.").

As a result, we cannot say that the bankruptcy court erred in concluding that the Trustee properly exercised his business judgment to settle for $31,000. Debtor has not shown any abuse of discretion.

## CONCLUSION

Based on the foregoing, we AFFIRM.