**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-15-1217-FDKu |
| | ) | |
| PAUL PHILLIP BARDOS, | ) | Bk. No.   6:10-bk-41455-SY |
| DBA Cadmus Construction Co., | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL D. ROGERS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| LESLIE T. GLADSTONE, | ) | |
| Liquidating Agent for the | ) | |
| Estate of Paul Phillip Bardos, | ) | |
| DBA Cadmus Construction Co., | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on February 19, 2016
at Pasadena, California

Filed – March 23, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott Ho Yun, Bankruptcy Judge, Presiding

Appearances:   Appellant Michael D. Rogers argued pro se;
Appellee Leslie T. Gladstone argued pro se.

   [*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

Before: FARIS, DUNN,[**] and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Appellant Michael D. Rogers appeals the bankruptcy court's order approving the sale of stock of chapter 11[1] debtor Paul Phillip Bardos' company, Cadmus Construction, Inc. ("Cadmus Inc."). We AFFIRM.

## FACTUAL BACKGROUND[2]

**A.    The Construction Contracts and State Court Litigation[3]**

Mr. Bardos was in the construction business. He sometimes did business as a sole proprietor under the name Cadmus Construction Co. ("Cadmus Co."). He owned 100% of the shares of Cadmus Inc., which was also engaged in the construction business.

Beginning in or around 2007, Mr. Bardos entered into a

---

[**] At oral argument held on February 19, 2016, Appellant raised potential grounds for the recusal of Judge Laura S. Taylor. On February 23, Judge Taylor issued an order recusing herself from the Panel assigned to this appeal. Following the recusal, Judge Randall L. Dunn was assigned to the Panel for this appeal in place of Judge Taylor. Judge Dunn has reviewed the briefs and records filed with respect to this appeal as well as the recording of the oral argument.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] Mr. Rogers presents us with a deficient record. We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] The background facts of this section are drawn largely from an earlier BAP appeal in this case. See Twenty-Nine Palms Enters. Corp. v. Bardos (In re Bardos), No. CC-13-1316-PaKuBl, 2014 WL 3703923 (9th Cir. BAP July 25, 2014) ("In re Bardos I").

2

number of construction contracts with Twenty-Nine Palms Band of Mission Indians of California (the "Tribe") to oversee development and construction projects undertaken by the Tribe and its corporate entity, Twenty-Nine Palms Enterprises Corporation ("Twenty-Nine Palms"). In re Bardos I, 2014 WL 3703923, at *1. Mr. Bardos served as contractor for some or all of these projects, doing so under various names, including his sole proprietorship, Cadmus Co. Id.

In 2009, Twenty-Nine Palms filed a complaint in the San Bernardino superior court against Cadmus Co. Id. Twenty-Nine Palms alleged that, because Cadmus Co. was not a licensed contractor, it was in violation of the relevant state licensing statutes. Id. It asked the court to order that Cadmus Co. disgorge all of the fees Twenty-Nine Palms had paid it. Id. The superior court granted summary judgment in favor of Twenty-Nine Palms and awarded it $917,043.09 plus pre-judgment interest. Id.

**B.    The Individual Bankruptcy Case**

On September 29, 2010, Mr. Bardos filed his chapter 11 bankruptcy petition (the "Individual Case"). He listed Twenty-Nine Palms as his largest creditor with a claim for $917,043.09. One of the assets of the estate is Mr. Bardos' stock in Cadmus Inc., with its value listed as "unknown."

**C.    The Corporate Bankruptcy Case**

A few months after Mr. Bardos filed his chapter 11 petition, Cadmus Inc. also filed for chapter 11 bankruptcy (the "Corporate Case"). The Corporate Case was ultimately converted to chapter 7, and Steven Speier was appointed as chapter 7 trustee.

3

**D.    The Retention of Mr. Rogers' Firm in the Individual Case**

On December 29, 2010, the court in the Individual Case approved Mr. Bardos' application for the employment of Mr. Rogers' law firm, Lambert & Rogers, APLC, as special counsel. Lambert & Rogers was retained to represent Mr. Bardos' estate in the state-court litigation between Twenty-Nine Palms and Cadmus Co.  The law firm would be compensated based on an hourly rate.

Mr. Rogers' firm apparently completed its work in the Individual Case.  On October 18, 2012, Mr. Rogers applied for final compensation in the amount of $58,066 plus expenses.  He stated that $48,169.50 had been paid to date.  The court approved and authorized payment of the requested compensation (a net balance of $9,896.50) by order entered on November 14, 2012. Mr. Rogers now claims that the compensation was never paid in full and that the unpaid balance is $8,431.12.  Nothing in the record corroborates this assertion, and there is no indication that Mr. Rogers ever brought the issue to the court's attention.

**E.    The Retention of Mr. Rogers' Firm in the Corporate Case**

On March 21, 2014, the chapter 7 trustee in the Corporate Case filed an application to employ Mr. Rogers' law firm as special litigation counsel.  The retainer agreement, which was attached to Mr. Rogers' declaration, provided for a contingency fee as follows:

CONTINGENCY FEE COMPENSATION

The CLIENT agrees to employ ATTORNEYS to defend and prosecute a lawsuit and arbitration and assigns to them for their fee TWENTY-FIVE PERCENT (25%) of all amounts actually recovered by way of settlement, compromise or otherwise prior to the filing of the Opening Brief with the California Court of Appeal, and FORTY PERCENT (40%) of all amounts actually recovered

4

by way of settlement, compromise, judgment, order, award or otherwise after the filing of the Opening Brief, subject to the below and any Bankruptcy Court order (the "Compensation Terms").

The retainer agreement also provided:

OTHER EMPLOYMENT TERMS

In addition to the Compensation Terms, the Employment Terms includes all of the following:

(1) ATTORNEYS [Lambert & Rogers] and CLIENT [the chapter 7 trustee in the Corporate Case] have conferred and agree that **no ownership interest in the DEBTOR [Cadmus Inc.] should [be] sold, transferred, or otherwise disposed of during the pendency of the CASE** and a prohibition against such a transfer should be included in any order approving the engagement of ATTORNEYS by CLIENT as provided for herein.

(2) **In the event any ownership interest in Cadmus Construction, Inc., is sold, transferred, or otherwise disposed of, and such transferral or disposition causes a prejudicial impact on ATTORNEYS' ability to obtain maximum recovery, the above-stated contingency fees shall be applied to the actual cash proceeds of any such sale, transferral, or disposition.** The determination of "prejudicial impact" shall be made by ATTORNEYS in their sole, unfettered discretion, subject to the right of the CLIENT in the reasonable exercise of its duties to contest such a determination with the Court in the Case.

(Emphases added.) Although the entire retainer agreement was filed with the bankruptcy court, neither Mr. Rogers nor the chapter 7 trustee called these unusual provisions to the bankruptcy court's attention.

The court granted the application and approved the "compensation that is to be paid on a contingency fee basis as set forth in the . . . Application."

**F.    The Stock Sale in the Individual Case**

The bankruptcy court apparently confirmed a plan of

5

reorganization in the Individual Case that provided, among other things, that if Mr. Bardos was convicted in a pending criminal case, the court would immediately appoint a liquidating agent. After Mr. Bardos pleaded guilty to one count in the criminal case, the court appointed accounting firm Squar Milner as liquidating agent on April 4, 2014. On July 23, the court approved the appointment of Appellee Leslie T. Gladstone ("Liquidating Agent") as successor liquidating agent.

When the Liquidating Agent took over, the estate in the Individual Case had essentially no cash, making it very difficult for the Liquidating Agent to do her job. The bankruptcy court permitted the Liquidating Agent to borrow $15,000 from Twenty-Nine Palms to fund an investigation of potential claims. In granting the request for approval of the advance, the bankruptcy court cautioned the Liquidating Agent that, given the doubtfulness of recovery, she "should be mindful that this case should not linger or stay open."

One of the assets of the estate in the Individual Case was Mr. Bardos' stock in Cadmus Inc. It initially appeared that the stock was worthless, but the Liquidating Agent negotiated an agreement to sell the stock to Twenty-Nine Palms for $20,000.

On April 28, 2015, she filed a Motion to Approve Stock Purchase Agreement ("Motion to Approve Stock Purchase") under § 363(b). She stated that "[t]here are no liens against the [Cadmus Inc.] Stock and [Cadmus Inc.] is a debtor in [a separate] bankruptcy with no expected distribution to shareholders." She argued that the sale of the stock was in the best interests of the estate, since it had unpaid claims and no other source of

6

funds.

Mr. Rogers opposed the Motion to Approve Stock Purchase. He pointed out that he had been employed since May 2014 as special litigation counsel in the Corporate Case. He contended that, based on his retention agreement in that case, he is entitled to a lien on the stock owned by the estate in the Individual Case. Specifically, he argued that the contingency fee employment agreement in the Corporate Case entitles him "to 40% of the purchase money in the event of a transfer in ownership interest of [Cadmus Inc.] . . . . [He] will be entitled to $8,000 of the purchase money." Mr. Rogers argued that: (1) the Liquidating Agent had not properly evaluated the estate's claims; (2) "$20,000 seems a bit low, especially considering it is a net of $12,000 after [Mr. Rogers'] cut" and even less after repayment of the Tribe's $15,000 loan and various fees; (3) he is pursuing Cadmus Inc.'s claims against the Tribe, and the sale would mean the he "will be, on some level, suing [his] own client"; (4) the Liquidating Agent failed to demonstrate the fairness or reasonableness of the purchase price; and (5) the Liquidating Agent "has been bought and paid for" or "is, at the very least, being played." Significantly, Mr. Rogers did not mention that he was owed any unpaid fees for work done in the Individual Case.

Mr. Rogers failed to appear at the hearing on the Motion to Approve Stock Purchase. The court rejected his contentions, reasoning that the chapter 7 trustee in the Corporate Case (i.e., Mr. Rogers' client) had consented to the sale, and Mr. Rogers did not have standing in the Individual Case. It held:

I'm prepared to grant the motion and if Mr. Rogers was

7

here I was going to let him know that I really, although I do share some concerns that he has raised in his opposition, I don't really think he has a right to object. I think his client, the Chapter 7 Trustee in the Cadmus case, as I can see from the e-mail exchange attached by Ms. Gladstone that Mr. Rogers' client seemed to have consented to this transaction and too I think Mr. Rogers is mistaken. I think to the extent that he's a professional and a potential admin creditor it's in the Cadmus case, not in this case, so I don't think he has the standing or the right to object to this transaction as a professional with a potential admin claim in this case.

The court expressed its incredulity that anyone would want to purchase the stock, when "[t]here is no money in it" and there likely will not "ever be money for equity." Nevertheless, the Liquidating Agent had stated in her briefs that Twenty-Nine Palms had approached her with an offer to buy the potentially worthless stock for $5,000, which she later negotiated to $20,000. She represented that there were no negative tax consequences to the estate. The Liquidating Agent stated that the sale "is fair and equitable and in the best interests of creditors."

The court made clear that Twenty-Nine Palms' stock purchase would not terminate the litigation between Cadmus Inc. and Twenty-Nine Palms, since Cadmus Inc.'s claims were property of its bankruptcy estate under the control of the chapter 7 trustee in the Corporate Case. The court cautioned Twenty-Nine Palms that it would have no ability to control the litigation against it or otherwise influence the handling of the lawsuit by the trustee in the Corporate Case. Counsel for Twenty-Nine Palms indicated that his client understood.

The bankruptcy court granted the Motion to Approve Stock Purchase and entered the order to that effect on June 23, 2015. Mr. Rogers timely appealed.

8

The Liquidating Agent represents that the sale of the stock has closed and the stock has been transferred to Twenty-Nine Palms. Under the stock purchase agreement, the entry of an order approving the sale and the expiry of the appeal period without an appeal being taken were conditions to the closing.[4] The Liquidating Agent represents that Twenty-Nine Palms waived this condition.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(b)(1), and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

(1) Whether this appeal is moot.

(2) Whether the bankruptcy court erred in approving the sale of stock.

**STANDARDS OF REVIEW**

We review de novo our own jurisdiction, including questions of mootness. Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003).

---

[4] The Stock Purchase Agreement states:

The obligations of each Party to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment, at or prior to the Closing, of each of the following conditions: (a) The Bankruptcy Court having jurisdiction over the Bankruptcy Proceedings shall have approved this Agreement and the transactions contemplated by this Agreement by entry of an order that is final for purposes of appeal, as to which the time for appeal, including any extensions, has expired, and from which no appeal has been taken[.]

9

Similarly, standing is a legal issue that we review de novo. Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 61 (9th Cir. 1994); Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009).

We review for abuse of discretion an order approving a § 363 sale. Moldo v. Clark (In re Clark), 266 B.R. 163, 168 (9th Cir. BAP 2001). We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion, first determining de novo whether the court identified the correct legal rule, and second examining the court's factual findings under the clearly erroneous standard. Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango Office, LLC), 481 B.R. 51, 64 (9th Cir. BAP 2012) (citing United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc)). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

**A.  This appeal is not moot.**

We have requested that the parties address the issue of mootness. As we stated in the prior appeal in this case:

> We cannot exercise jurisdiction over a moot appeal. A moot case is one where the issues presented are no longer live, and no case or controversy exists. The test for mootness is whether an appellate court can still grant effective relief to the prevailing party if it decides the merits in his or her favor. If a case becomes moot while the appeal is pending, an appellate court must dismiss the appeal.

In re Bardos I, 2014 WL 3703923, at *6 (internal citations

10

omitted). We recognize two types of mootness: constitutional mootness and equitable mootness.

### 1. Constitutional Mootness

Constitutional mootness "occurs when an appellate court cannot give the appellant any relief whatsoever in the event that it decides in appellant's favor." Id. (citing Felster Publ'g v. Burrell, 415 F.3d 994, 998 (9th Cir. 2005)). Constitutional mootness is inapplicable in the present case, because we have the authority to grant the requested relief and undo the sale of stock.

### 2. Equitable Mootness

Equitable mootness requires "that practical and equitable factors should be taken into consideration in determining if an appeal is moot." In re Bardos I, 2014 WL 3703923, at *6; see Onouli-Kona Land Co. v. Richards (In re Onouli-Kona Land Co.), 846 F.2d 1170, 1171 (9th Cir. 1988) ("[b]ankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets"). Equitable mootness arises when "appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court, thus 'permitting such a comprehensive change of circumstances to occur as to render it inequitable . . . to consider the merits of the appeal." In re Bardos I, 2014 WL 3703923, at *6 (quoting Focus Media, Inc. v. NBC (In re Focus Media, Inc.), 378 F.3d 916, 922 (9th Cir. 2004)). The party asserting equitable mootness must "demonstrate that the case involves transactions 'so complex or difficult to unwind' that equitable mootness applies." Id. at *7

11

(quoting Lowenschuss v. Selnick (In re Lowenschuss), 170 F.3d 923, 933 (9th Cir. 1999)).

"Equitable mootness requires the court to look beyond impossibility of a remedy to 'the consequences of the remedy and the number of third parties who have changed their position in reliance on the order that is being appealed.'" Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33 (9th Cir. BAP 2008) (quoting Darby v. Zimmerman (In re Popp), 323 B.R. 260, 271 (9th Cir. BAP 2005)). "In other words, equitable principles may require dismissal of the appeal when the appellant neglects to obtain a stay pending appeal and the rights of third parties intervene." Zuercher v. Kravitz (In re Zuercher Trust of 1999), BAP No. NC-13-1299, 2014 WL 7191348, at *6 (9th Cir. BAP Dec. 17, 2014) (citing Spirtos v. Moreno (In re Spirtos), 992 F.2d 1004, 1006 (9th Cir. 1993); In re Popp, 323 B.R. at 271).

Although the concept of equitable mootness is not new, the Ninth Circuit recently endorsed standards for evaluating equitable mootness:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 881 (9th Cir. 2012).

Beginning with the first factor, in the present case,

12

Mr. Rogers never sought a stay of the order approving the stock sale. He says that there was no need to seek a stay, since his appeal prevented the satisfaction of a condition to closing. The Liquidating Agent says that Twenty-Nine Palms waived this condition. Both the Stock Purchase Agreement and the bankruptcy court's order approving that agreement contemplate possible waivers of the closing conditions.[5] Mr. Rogers simply assumed that his notice of appeal would block the sale. His assumption was unwarranted. Therefore, Mr. Rogers did not diligently pursue his rights to stay the sale.

However, our inquiry does not stop there. While "failure to seek a stay pending appeal, at least without an adequate excuse, requires dismissal of an appeal[,]" In re Zuercher Trust of 1999, 2014 WL 7191348, at *7 (citing Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.), 771 F.3d 1211 (9th Cir. 2014)), we recently held that, even when an objector did not seek a stay, "there must also be some subsequent event that would render consideration of the issues on appeal inequitable, and thereby trigger an equitable mootness analysis." In re Zuercher Trust of 1999, 2014 WL 7191348, at *7 (citations omitted). In other words, even where "[the objector] did not seek a stay of the Sale Order pending appeal and has provided no satisfactory explanation for the failure to do so, to complete our equitable mootness analysis

---

[5] Paragraph 2.1 of the agreement provides that the closing will take place no later than three business days "after the last of the conditions to Closing set forth in Section 6 have been satisfied **or waived** . . . ." (Emphasis added.) Paragraph 3 of the bankruptcy court's order contains virtually the same language.

13

we must consider whether [the objector's] failure to seek a stay 'creates a situation rendering it inequitable to reverse the orders appealed from.'" Id. (quoting In re Mortgs., Ltd., 771 F.3d at 1216). Thus, we continue with our analysis of the remaining Thorpe factors.

The second factor described in Thorpe is whether the plan has been substantially consummated. In re Thorpe Insulation Co., 677 F.3d at 882.[6] Here, the Liquidating Agent represents that the stock sale has been completed, with the stock transferred to Twenty-Nine Palms. This weighs in favor of mootness.

The third Thorpe factor considers the effect of a reversal on third parties who are not "before the court." See In re Zuercher Trust of 1999, 2014 WL 7191348, at *8. While it is true that Twenty-Nine Palms is not a party to this appeal, it is the largest creditor and a participant in both the Individual Case and the Corporate Case. Accordingly, we cannot say that Twenty-Nine Palms is the type of third party that equitable mootness is meant to protect.

Further, "the question is not whether it is possible to alter a plan such that no third party interests are affected, but whether it is possible to do so in a way that does not affect third party interests to such an extent that the change is inequitable." In re Thorpe Insulation Co., 677 F.3d at 882. If we conclude that the bankruptcy court erred, it would be

---

[6] In the context of a chapter 11 plan, § 1101(2) provides a special statutory definition of the phrase "substantial consummation." The phrase does not directly apply to an asset sale, but a similar concept can be applied by analogy.

14

relatively easy to restore the status quo ante: the Liquidating Agent could return the purchase price to Twenty-Nine Palms, and Twenty-Nine Palms could return the stock to the Liquidating Agent. Thus, there is no evidence that Twenty-Nine Palms has irrevocably changed its position or cannot be made whole.

At oral argument, the Liquidating Agent said that she already spent part of the sale proceeds on fees due to the United States Trustee and other administrative expenses, and she is unsure whether she can recall all or part of those funds. But the Liquidating Agent bears the burden of demonstrating that the transaction **cannot** be undone; uncertainty about whether it can be undone is not sufficient. See id. at 880 ("The party moving for dismissal on mootness grounds bears a heavy burden." (citation and quotation marks omitted)).

Finally, the inability of the Liquidating Agent to repay the entire purchase price to Twenty-Nine Palms might not lead to an inequitable result; after all, it was Twenty-Nine Palms that chose to waive the closing condition and close the transaction despite Mr. Rogers' pending appeal. It might not be inequitable to require Twenty-Nine Palms to face the consequences of its calculated risk.

"Fourth, and most importantly, we look to whether the bankruptcy court on remand may be able to devise an equitable remedy. . . . Where equitable relief, though incomplete, is available, the appeal is not moot." Id. at 883 (citing Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.), 163 F.3d 570, 578 (9th Cir. 1998)). Aside from the fact that the stock sale has been consummated, the Liquidating Agent has failed

15

to provide us with any evidence that the transaction is "so complex or difficult to unwind" that equitable mootness would prevent our reversal of the order granting the Motion to Approve Stock Purchase.

Therefore, we hold that this appeal is not equitably moot.

**B.   Mr. Rogers failed to establish his standing in the Individual Case to object to the stock sale.**

The Liquidating Agent argues that Mr. Rogers lacks standing to object to the stock sale in the Individual Case.  We agree with the conclusion, but for slightly different reasons.

Mr. Rogers objected to the stock sale in the Individual Case on the basis that it would impair his rights under the contingent fee agreement.  But Mr. Rogers' contingent fee agreement was with the chapter 7 trustee in the Corporate Case.  The Liquidating Agent in the Individual Case was not bound by that agreement, and the agreement gave Mr. Rogers no rights in the Individual Case. Indeed, the stock transfer restriction in his retention agreement in the Corporate Case was completely ineffective, because Cadmus Inc. did not own or control its own stock and had no power to restrict transfers of that stock.[7]  The chapter 7 trustee in the Corporate Case had no more power over the stock than Cadmus Inc. As the Liquidating Agent correctly pointed out, "Steven Speier – the client named in the Retainer Agreement and representative of [Cadmus Inc.'s] estate – never owned the Stock and never had any

---

[7] The Liquidating Agent also argues that the creation of a lien on the stock in the Corporate Case would have violated the automatic stay under § 362(a)(4).  We decline to address it because it is unnecessary and because the Liquidating Agent admittedly failed to raise it in the bankruptcy court.

16

authority whatsoever to encumber the Stock, which is property of the Shareholder bankruptcy estate." (Emphasis omitted.) Mr. Rogers has failed to provide any facts or authority to the contrary. Therefore, the contingent fee agreement in the Corporate case gave Mr. Rogers no rights in the Individual Case.[8]

Mr. Rogers argues for the first time on appeal that he has standing in the Individual Case because his approved final compensation for services rendered in that case was not paid in full. He says that "[t]here wasn't enough money in the estate to pay [his] last fee bill; [he] is still owed $8,431.12." Nothing in the record either corroborates or refutes this assertion.

More importantly, Mr. Rogers did not make this argument in the bankruptcy court, and, because he did not attend the hearing on approval of the stock sale, he was not available to address the court's concerns about his standing. We decline to consider this new argument on appeal. See Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015) ("[F]ederal appellate courts will not consider issues not properly raised in the trial courts. . . . An issue only is 'properly raised' if it is raised sufficiently to permit the trial court to rule upon it." (internal citations omitted)). Accordingly, Mr. Rogers lacks standing to prosecute this appeal.

---

[8] We are troubled by the fact that neither Mr. Rogers nor counsel for the chapter 7 trustee specifically called the stock transfer restrictions to the bankruptcy court's attention when they asked the bankruptcy court to approve that agreement in the Corporate Case. Although the agreement was filed with the court, most bankruptcy courts expect counsel to point out, explain, and justify non-standard provisions such as these.

17

**C.  The bankruptcy court did not err when it approved the sale.**

Even assuming he has standing, Mr. Rogers has failed to show reversible error.

**1.  Mr. Rogers' briefs do not identify any error.**

As a preliminary matter, we note that Mr. Rogers' nebulous arguments, spanning approximately two pages of his opening brief, do not clearly identify any points of error or cite any error in the record.

As a general rule, a party's brief "must make specific references to the relevant portions of the record.  Opposing parties and the court are not obliged to search the entire record, unaided, for error."  Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis), 347 B.R. 679, 686 (9th Cir. BAP 2006) (internal citations omitted).  Moreover, we "will not consider a matter on appeal that is not specifically and distinctly argued in [an] appellant's opening brief."  Id. at 690 (citing Affordable Housing Dev. Corp. v. Fresno, 433 F.3d 1182, 1193 (9th Cir. 2006); Price v. Lehtinen (In re Lehtinen), 332 B.R. 404, 410 (9th Cir. BAP 2005)).

Mr. Rogers' failure to "specifically and distinctly" argue the alleged errors and provide "specific references" to the record supports our decision to reject this appeal.

**2.  The court may approve a sale in the best interest of the estate under § 363.**

Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  § 363(b)(1).  "The trustee (and, ultimately, the bankruptcy

18

court) must assure that the estate receives optimal value as to the asset to be sold." DeBilio v. Golden (In re DeBilio), BAP No. CC-13-1441-TaPaKi, 2014 WL 4476585, at *6 (9th Cir. BAP Sept. 11, 2014) (citing § 363(b)(1); Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 288-89 (9th Cir. BAP 2005)). We also stated that, "[i]n the Ninth Circuit, a § 363(b)(1) sale does not require a good faith finding." Id. (citing Thomas v. Namba (In re Thomas), 287 B.R. 782, 785 (9th Cir. BAP 2002) ("While no bankruptcy judge is likely to approve a sale that does not appear to be in 'good faith,' an actual finding of 'good faith' is not an essential element for approval of a sale under § 363(b).")).

**3.    The sale price was adequate.**

Mr. Rogers' basic argument is that the purchase price for the stock was "a bit low." The bankruptcy court did not clearly err when it rejected this factual contention.

In her motion for approval of the stock sale, the Liquidating Agent declared that:

> The Agreement is based on my sound business judgment, as it provides for payment of substantial funds to the estate. I have also been advised that there are no adverse tax consequences to the estate. Thus, the proposed Agreement is fair and equitable and in the best interests of creditors.

In his opposition, Mr. Rogers briefly described the claims against Twenty-Nine Palms and declared that "[i]t does not seem that [Liquidating Agent] has evaluated this before agreeing to a sale of the stock for $20,000." He acknowledged, however, that, "[o]f course, coming up with a methodology for calculating a sale price that efficaciously incorporates the risk/return is

19

problematic and open to bias depending on the 'experts' canvassed for their opinion, but $20,000 seems a bit low, especially considering it is a net of $12,000 after my cut." He also attacked the Liquidating Agent personally. He claimed that "she also has a conflict of interest in that she is the first one to get paid out of the $20,000" and "[i]t must be assumed that [the Liquidating Agent] has been bought and paid for."

In reply, the Liquidating Agent declared that the stock "does not have any other value to the Debtor's estate" apart from the proposed sale. She emphasized her independence and stated that Mr. Rogers was free to bid for the stock if he thought the purchase price was too low. She also provided e-mail correspondence between herself and the chapter 7 trustee in the Corporate Case, in which the trustee said, "I doubt there will be a surplus in my case, but we will probably make a small distribution to creditors."

The bankruptcy court accepted the Liquidating Agent's evidence. The court noted that "this is very unusual why [sic] anybody would want to buy a privately held equity interest of a Chapter 7 debtor. There is no money in it and at least according to [the chapter 7 trustee in the Corporate Case,] he doesn't think there will ever be money for equity." The court went on to say, "I'm still mystified why anybody will want to buy a [sic] out of the money equity privately held in a Chapter 7 case but it generates money for this estate so I am willing to grant the motion."

The bankruptcy court did not commit clear error when it rejected Mr. Rogers' contention that the sale price was "a bit

20

low" and instead agreed with the Liquidating Agent's evidence.

**4.    We decline to take judicial notice of a state court decision that postdated the bankruptcy court's order.**

Mr. Rogers submits that the Panel should take judicial notice of a recent, unpublished opinion in which the California Court of Appeals held that the arbitration provisions in the various construction contracts were valid.

We decline to take judicial notice of the opinion. Our job is to determine whether the bankruptcy court erred based on the evidence before it, which in turn depends in part on whether the Liquidating Agent properly exercised her business judgment based on the facts known at the time. Neither the bankruptcy court nor the Liquidating Agent had the appellate opinion before them, and neither of them is charged with perfect foresight. Therefore, that opinion is not relevant to this appeal.

**5.    The bankruptcy court properly addressed the effects of the stock sale on Mr. Rogers and the Corporate Case.**

Mr. Rogers argues that, if Twenty-Nine Palms owns 100% of Cadmus Inc.'s stock, then he "will be, on some level, suing his own client." Mr. Rogers posits that this "could cause problems down the road."

In the first place, his premise is wrong. As the bankruptcy court correctly observed, and as Twenty-Nine Palms' counsel confirmed, the chapter 7 trustee of Cadmus Inc., not the shareholder of Cadmus Inc., is Mr. Rogers' client and will control the prosecution of the claims.

Further, the conclusion does not follow. The Liquidating Agent's duty in the Individual Case was to take steps which, in

21

her judgment, advanced the interests of Mr. Bardos' estate and creditors. She had no duty to protect Cadmus Inc.'s estate and creditors or to protect Mr. Rogers' contingent fee. Put simply, even if it were true that the sale of the stock put Mr. Rogers in a difficult position in the Corporate Case, that would not be the concern of the Liquidating Agent or the bankruptcy court in the Individual Case.

**6.    _Lahijani_ and _Fitzgerald_ are inapplicable.**

Mr. Rogers argues that "it would seem to be appropriate to use the analysis set forth in In re Fitzgerald, 428 B.R. 872, 883-884 (9th Cir. BAP 2010) and In re Lahijani, 325 B.R. 282, 289-290 (9th Cir. BAP 2005)." We disagree.

_Fitzgerald_ and _Lahijani_ both considered the sale of litigation claims to a person against whom those claims might be asserted. Both decisions rest on the common-sense proposition that a "sale" of claims to a defendant has the same effect as a settlement of those claims, so such "sales" should be evaluated both as sales and as settlements. _Lahijani_ holds that:

> when a cause of action is being sold to a present or potential defendant over the objection of creditors, a bankruptcy court must, in addition to treating it as a sale, independently evaluate the transaction as a settlement under the prevailing 'fair and equitable' test, and consider the possibility of authorizing the objecting creditors to prosecute the cause of action for the benefit of the estate, as permitted by § 503(b)(3)(B).

In re Lahijani, 325 B.R. at 284. _Fitzgerald_ expands on _Lahijani_, holding that "it is not enough for Trustee to have stopped his inquiry when he determined that the sale price was adequate as long as it covered administrative expenses and the claims of non-insider creditors." In re Fitzgerald, 428 B.R. at 884.

Lahijani and Fitzgerald are inapplicable to this case because the Liquidating Agent was not selling claims; rather, she was selling stock. The claims about which Mr. Rogers was concerned belonged to the corporation, not to the bankruptcy estate in the Individual Case which the Liquidating Agent was administering. Moreover, the bankruptcy court carefully confirmed that the sale of the corporation's stock would not have any effect on the claims of the Cadmus Inc. estate against third parties.

**CONCLUSION**

For the reasons set forth above, we AFFIRM.