NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JAMES LLOYD WALKER,<br>　　　　　　Debtor. | BAP No. CC-21-1162-FLS<br><br>Bk. No. 6:15-bk-21418-MH |
| JAMES LLOYD WALKER,<br>　　　　　　Appellant,<br>v.<br>ROBERT S. WHITMORE, Attorney,<br>Chapter 7 Trustee,<br>　　　　　　Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Mark D. Houle, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor James Lloyd Walker appeals the bankruptcy

court's order awarding nearly $90,000 in fees and costs to the chapter 7

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

trustee and his counsel. We agree with the bankruptcy court, appellee, and Mr. Walker's own counsel that the unusually large fee award was the result of Mr. Walker's obstructive and obstreperous conduct. We discern no error and AFFIRM.

## FACTS[2]

### A.    Mr. Walker's chapter 7 petition

Mr. Walker, through counsel, filed a chapter 7 petition in November 2015. Appellee Robert S. Whitmore ("Trustee") was appointed chapter 7 trustee. In March 2016, the Trustee sought to retain the law firm of Best Best & Krieger LLP ("BBK"). Over Mr. Walker's objection, the bankruptcy court granted the application.

Meanwhile, the Trustee had filed a motion for turnover of Mr. Walker's books and records. He asserted that Mr. Walker's schedules disclosed only two pieces of real property,[3] yet his 2014 tax return listed five rental properties. He also stated that Mr. Walker twice failed to appear at his § 341 meeting of creditors and, when he finally appeared, he mentioned assets that were not listed in his schedules. The Trustee requested certain documents from Mr. Walker but received no response.

Mr. Walker opposed the motion through his second attorney, arguing

---

[2] We exercise our discretion to review the bankruptcy court's docket in this case, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] The Trustee abandoned the two scheduled properties in December 2017.

that his prior counsel filed the chapter 7 petition fraudulently without his approval. He requested that the bankruptcy court dismiss his case or convert it to one under chapter 13. The bankruptcy court held a hearing and granted the turnover motion.

In July 2016, the U.S. Trustee filed an adversary complaint to deny Mr. Walker's discharge based on his failure to disclose assets, false statements, and the like. Very soon thereafter, in August 2016, Mr. Walker waived his discharge.

Creditors filed only five proofs of claim. The Trustee successfully objected to two claims, and the remaining creditors withdrew their claims or amended their claim to $0.

**B.    The sale of Mr. Walker's rental property**

The Trustee continued his investigation into Mr. Walker's assets. In March 2018, the Trustee filed a motion for turnover of an undisclosed rental property located in Hesperia, California.

Mr. Walker, represented by his third counsel, filed a very brief opposition to the motion for turnover. He argued that there were no unsecured creditors remaining in his case. He offered to pay the existing administrative claims in lieu of turning over the rental property.

Mr. Walker's counsel explained in his declaration that Mr. Walker initially agreed to pay the administrative expenses and not oppose the turnover motion. Counsel had communicated that decision to the Trustee, and the parties agreed to continue the hearing on the turnover motion

3

multiple times. When Mr. Walker discovered that the Trustee's expenses were $50,000, he insisted that he did not have to pay anything.

After a hearing, the court granted the motion and ordered Mr. Walker to turn over to the Trustee possession and control of the rental property, its books and accounting records, and its postpetition proceeds.

Mr. Walker continued to refuse to turn over the rental property or cooperate with the Trustee. The Trustee filed a motion for an order to show cause why Mr. Walker should not be held in contempt. The bankruptcy court issued the order to show cause and set a hearing date. Mr. Walker did not respond. After multiple continuances, the bankruptcy court issued an interim order directing Mr. Walker to cooperate with the Trustee and allow the Trustee access to the rental property.

The Trustee next filed a motion for approval to sell the rental property. Mr. Walker did not file an opposition to the sale motion. After a hearing, the bankruptcy court approved the sale of the rental property for $310,000, subject to overbid.

Soon thereafter, the Trustee filed an emergency application for an amended order to sell the property, asserting that Mr. Walker's wife was impeding the sale of the rental property. The bankruptcy court issued an amended order clarifying that Mrs. Walker's community property interest was also subject to the sale order and allowing the Trustee to execute documents on her behalf.

The Trustee reported in August 2019 that he successfully sold the

rental property for $310,000.

**C.    The Trustee's request for administrative fees**

In the meantime, BBK filed an interim application for fees and costs totaling approximately $43,000. Mr. Walker did not file any objection. After a hearing, the court reduced the amount requested and awarded BBK $34,358.50 in fees and $2,029.19 in costs.

Mr. Walker appealed the interim fee award to the BAP. He sought a stay pending appeal, which the Trustee opposed; the bankruptcy court denied the stay. Mr. Walker then successfully moved to dismiss the appeal. Inexplicably, he filed an application for a writ of mandamus with the Ninth Circuit, but the Ninth Circuit denied his application.

The Trustee's accountant filed an application for fees totaling $1,838 and costs totaling $277.80. Mr. Walker did not oppose the application.

In November 2020, BBK filed a final application for compensation. It sought an additional $42,006.00 in fees and $4,812.26 in costs that it represented were incurred as a result of Mr. Walker's obstructive conduct. Mr. Walker did not oppose the application.

In May 2021, the Trustee filed his final report and request for compensation. He reported that he had realized $310,365.92 for the estate and incurred a total of $24,751.96 in administrative expenses plus compensation for himself, BBK, and the Trustee's accountant in the amount of $95,574.83, leaving a balance of $190,039.13 payable to Mr. Walker. (As is noted above, the Trustee had eliminated all unsecured claims.)

5

Mr. Walker objected to the fee application. He argued that the requested administrative expenses were excessive, given the limited unsecured claims. He argued that he should have had the opportunity to pay the Trustee's fees rather than lose the rental property. He contended that BBK should not have run up fees trying to sell the rental property.

The Trustee pointed out that the fees were largely due to Mr. Walker's own obstructive and obstreperous conduct. He also argued that he had tried to settle the matter with Mr. Walker multiple times and years before filing the motion for turnover, yet Mr. Walker was either unresponsive or chose to renege on the proposed settlement agreement.

At the hearing on the fee application, counsel for Mr. Walker argued that BBK's fees were unusually high, but the bankruptcy court commented that, as "a result of the debtor's actions the Trustee was forced to do much more than would otherwise be the case and, as a consequence, the fees are much higher than one would normally expect in a situation like this." It said that "[t]he problem again in Mr. Walker's case was Mr. Walker. He . . . was his own worst enemy."

Mr. Walker's attorney agreed with the court's assessment of his client's behavior. He said that he was not arguing that BBK did not do the work but rather that some of the work was unnecessary and the Trustee could have accomplished his goal of obtaining control of the rental property with only a few hours' work or by seeking to have the U.S. Marshals evict Mr. Walker's tenant.

6

The bankruptcy court continued the hearing to further review the fee application. The court issued a tentative ruling acknowledging that most of the fees were incurred due to Mr. Walker's obstruction but criticized certain billing entries as "excessive, vague, and unnecessary billing by Counsel." It was inclined to reduce BBK's fees by $5,952 to $36,054. Combined with the earlier interim fee award, BBK's fees totaled $70,412.50, and its expenses totaled $6,841.45. The court stated that it was inclined to award the Trustee most of his requested fees and costs.

At the continued hearing, Mr. Walker's counsel stated that the court's tentative ruling was "very fair" and submitted the matter on the tentative ruling. BBK took issue with some of the bankruptcy court's harsher criticism in the tentative ruling. The bankruptcy court agreed that the language should have been "toned down" and conveyed an "incorrect message." The court granted the fee application and approved the fees and expenses in the amounts stated in the tentative ruling.

Mr. Walker timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in its award of fees and costs to BBK and the Trustee.

7

**STANDARD OF REVIEW**

"A bankruptcy court's award of attorney fees will not be disturbed unless the bankruptcy court abused its discretion or erroneously applied the law." *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 685 (9th Cir. BAP 2006). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

**DISCUSSION**

**A.    The bankruptcy court may award reasonable compensation to professionals providing services to the Trustee.**

"Section 330(a)(1) provides that, after notice and a hearing, the court may award to counsel for the trustee reasonable compensation for actual, necessary services rendered and reimbursement for actual and necessary expenses." *In re Tevis*, 347 B.R. at 694. Section 330(a)(3) directs the bankruptcy court to consider "the nature, the extent, and the value of such services" as determined by factors including:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed[.]

§ 330(a)(3)(A)-(D); *see also* § 330(a)(4) (prohibiting compensation for "(ii) services that were not – (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case"); *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 108 (9th Cir. BAP 2000) ("A bankruptcy court also must examine the circumstances and the manner in which services are performed and the results achieved in order to arrive at a determination of a reasonable fee allowance.").

## B.     The bankruptcy court did not err in awarding fees to BBK.

Mr. Walker complains that BBK ran up its fees by "churning" the case. We reject these arguments.

The bankruptcy court carefully reviewed BBK's billing entries and reduced its requested fees by approximately fifteen percent. It provided clear reasons for its reductions and otherwise found the fees reasonable. In particular, the bankruptcy court found that BBK reasonably incurred the allowed fees in dealing with Mr. Walker's obstructive and difficult behavior. The bankruptcy court acted within its discretion, and we discern

9

no error.

### 1.    Necessity of BBK's work

Mr. Walker argues that BBK's fees were excessive and unnecessary, given that there was no distribution to unsecured creditors, and contends that the rental property was liquidated merely to enrich the Trustee and his professionals. We reject this argument.

Mr. Walker ignores the fact, acknowledged by his own counsel, that BBK's fees were incurred as a result of his own obstructive conduct: he failed to cooperate with the Trustee, concealed his business and property interests, and tried to prevent the Trustee from selling the rental property, necessitating multiple motions for turnover, an order to show cause, and further motions. The bankruptcy court did not err in determining that BBK's actions were necessary and reasonable given Mr. Walker's unreasonable posture.

Mr. Walker argues that he should not be punished for being a "confused and frightened" pro se debtor who did nothing. But Mr. Walker was represented by counsel for much of the proceedings, and his intermittent pro se status is no reason to overlook his failure to cooperate with the Trustee and comply with his responsibilities as a chapter 7 debtor. *See In re Morris*, BAP No. NC-19-1071-FBG, 2019 WL 5846841, at *3 (9th Cir. BAP Nov. 6, 2019) ("While courts construe pro se litigants' filings liberally, pro se litigants must still comply with all procedural rules and must provide the information that is necessary to administer the bankruptcy case

10

and evaluate their entitlement to relief."); § 521(a)(3) (the debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties"); Rule 4002(a)(4) (the debtor shall "cooperate with the trustee in the preparation of an inventory, the examination of proofs of claim, and the administration of the estate"). Furthermore, Mr. Walker did not merely "do nothing"; he often strenuously opposed the Trustee's motions and sought to thwart the Trustee's efforts to recover his administrative expenses, thus forcing the Trustee and BBK to respond accordingly.

### 2. Writ of assistance

Mr. Walker argues that the Trustee should have obtained a writ of assistance and directed the U.S. Marshals Service to evict his tenants quickly and inexpensively. Mr. Walker offers no support for the astonishing proposition that "one hour of work" could have resulted in a "simple" eviction "within a week." He conveniently forgets that he resisted turnover of the rental property and refused to give the Trustee information about and access to the rental property. Mr. Walker did everything he could to ensure that the process was not "simple."

### 3. Fraud

Mr. Walker argues for the first time on appeal that BBK's fee application was false and fraudulent. He never made this contention in the bankruptcy court. In fact, his own counsel told the bankruptcy court that he did not contest the accuracy of the billing records. Mr. Walker has thus

11

waived this argument on appeal. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (we do not consider arguments and allegations raised for the first time on appeal).

Even if we were to consider this argument, we would find no merit. Mr. Walker did not identify any instance of fraud concerning BBK's billing records. Contrary to his assertions, the bankruptcy court never suggested that the Trustee or BBK engaged in fraud. Although the court criticized some of the billing entries, it later tempered its criticism and found the remainder of BBK's fees reasonable. This was not error.

## C.    The bankruptcy court did not err in awarding fees to the Trustee.

Mr. Walker argues (without support) that the Trustee ran up his bills. We reject this argument for the same reasons stated above.

He also contends that the Trustee's fees were limited by a statutory maximum in § 326. However, Mr. Walker did not raise any objection in the bankruptcy court on the basis that the Trustee's fee exceeded the statutory cap. He has waived this argument on appeal. *See Padgett*, 587 F.3d at 985 n.2. In any event, the Trustee's fees, as documented in his final report, comport with § 326.[4]

---

[4] Contrary to Mr. Walker's hopes, § 326 does not limit BBK's fees. That section refers to compensation awarded to the case trustee, not his professionals. *See* § 326(a) ("the court may allow reasonable compensation under section 330 of this title to the trustee for trustee's services"). Section 328, which governs compensation of professionals, imposes no percentage cap.

**CONCLUSION**

The bankruptcy court did not err in its award of administrative expenses to BBK or the Trustee. We AFFIRM.